**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

CITY OF JEFFERSON, MISSOURI,    )
                                )
          Plaintiff,            )
                                )
     vs.                        )          Case No. 4:22-CV-313 SRW
                                )
AT&T CORP., *et al.*,           )
                                )
          Defendants.           )

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on Plaintiff City of Jefferson, Missouri's Motion to

Remand to State Court (ECF No. 50), Defendants T-Mobile Central LLC, T-Mobile US, Inc., T-

Mobile USA, Inc., Sprint Spectrum, LLC, and Sprint Communications, LLC's Motion to Sever

(ECF No. 52), Defendants AT&T Corp., AT&T Inc., AT&T Mobility LLC, Missouri RSA 11/12

LP, New Cingular Wireless PCS, LLC, and Southwestern Bell Telephone Company's Motion to

Sever (ECF No. 68), Defendants Cellco Partnership, Bell Atlantic Mobile Systems LLC, GTE

Wireless LLC, Verizon Americas LLC, Alltel Corporation, Missouri RSA 4 Limited Partnership,

and St. Joseph CellTelCo's Motion to Sever (ECF No. 73), and Defendant Sho-Me

Technologies' Motion to Sever (ECF No. 75). Based on the following, this Court finds it does

not have subject matter jurisdiction and remands the entire case back to the state court.

**I.      BACKGROUND**

Plaintiff City of Jefferson, Missouri ("Jefferson City") filed a Petition, followed by a First

Amended Petition, in the Circuit Court of St. Louis County asserting twenty-four counts against

twenty-one Defendants which allegedly provide telephone or telecommunication services in

Jefferson City. The First Amended Petition generally alleges Defendants have failed to pay a

municipal license tax. Jefferson City brings Counts I-IV against the AT&T Defendants which

1

includes AT&T Corp., AT&T Inc., AT&T Mobility LLC, Missouri RSA 11/12 LP, New

Cingular Wireless PCS, LLC, and Southwestern Bell Telephone Company. Counts I-IV seek

delinquent taxes, interest, and penalties (Count I); a violation of Missouri Revised Statute

392.350 (Count II); a declaratory judgment (Count III); and an accounting (Count IV). Counts V-

VIII allege the same causes of action against the Sprint Defendants which includes Sprint

Spectrum, LLC, and Sprint Communications, LLC. Counts IX-XII allege the same causes of

action against the T-Mobile Defendants which includes T-Mobile Central LLC, T-Mobile US,

Inc., T-Mobile USA, Inc. Counts XIII-XVI allege the same causes of action against the US

Cellular Defendants which includes Telephone and Data Systems, Inc. and USCOC of Greater

Missouri, LLC. Counts XVII-XX allege the same causes of action against the Verizon

Defendants which includes Cellco Partnership, Bell Atlantic Mobile Systems LLC, GTE

Wireless LLC, Verizon Americas LLC, Alltel Corporation, Missouri RSA 4 Limited Partnership,

and St. Joseph CellTelCo. Counts XXI-XXIV allege the same causes of action against Defendant

Sho-Me Technologies, LLC.

The T-Mobile and Sprint Defendants removed the matter to this Court on March 16,

2022, asserting the Court has diversity jurisdiction and federal question jurisdiction. The AT&T,

Verizon, and US Cellular Defendants all joined the removal, and asserted additional bases for

removal. Jefferson City moved to remand the matter back to state court arguing this Court does

not have diversity jurisdiction because there are nondiverse defendants, and federal question

jurisdiction does not exist on the face of Jefferson City's First Amended Petition. Defendants

have also filed various motions to sever arguing the Court should sever the cases and remand

only those cases with nondiverse defendants.

The citizenship of the parties, as alleged in the Amended Petition and the various Notices

of Removal is as follows:

2

**Plaintiff-**
> **Jefferson City**: <u>Missouri</u>

**AT&T Defendants-**
> **AT&T Corporation**: New York and New Jersey
> **AT&T Incorporated**: Delaware and other unknown states[1]
> **AT&T Mobility, LLC**: Delaware, Georgia, Texas, New York, and New Jersey
> **Missouri RSA 11/12 LP**: Delaware, Georgia, Texas, New York, New Jersey, and <u>Missouri</u>
> **New Cingular Wireless PCS, LLC**: Delaware, Georgia, Texas, New York, and New Jersey
> **Southwestern Bell Telephone Co.**: Delaware and other unknown states [2]

**Sprint Defendants-**
> **Sprint Communications, Inc.** (now Sprint Communications, LLC): Delaware and Washington
> **Sprint Spectrum, LLC**: Delaware and Washington

**T-Mobile Defendants-**
> **T-Mobile Central LLC**: Delaware and Washington
> **T-Mobile US, Inc.**: Delaware and Washington
> **T-Mobile USA, Inc.**: Washington

**US Cellular Defendants-**
> **USCOC of Greater Missouri, LLC**: Delaware and Illinois
> **Telephone and Data Systems, Inc.**: Delaware and Illinois

**Verizon Defendants-**
> **Cellco Partnership**: Delaware and New York
> **Bell Atlantic Mobile Systems, LLC**: Delaware and New York
> **GTE Wireless, LLC**: Delaware and New York
> **Verizon Americas, LLC**: Delaware and New York
> **Alltel Corporation**: Delaware and New Jersey
> **Missouri RSA 4 Limited Partnership**: Delaware, New Jersey, New York, and <u>Missouri</u>
> **St. Joseph CellTelCo.**: Unknown[3]

**Sho-Me Defendant-**
> **Sho-Me Technologies, LLC**: <u>Missouri</u>

---

[1] The AT&T Defendants have stated AT&T Incorporated is incorporated in Delaware. They have not stated where its principal place of business is. 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

[2] The AT&T Defendants have stated Southwestern Bell Telephone Co. is incorporated in Delaware. They have not stated where its principal place of business is. 28 U.S.C. § 1332(c)(1).

[3] According to the Verizon Defendants' Notice of Removal, they are unaware of the citizenship of this defendant.

3

## II.    STANDARD

A defendant may remove to federal court any state court civil action over which the federal court could exercise original jurisdiction. 28 U.S.C. § 1441(a). "The [removing] defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence." *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). "Federal courts are to resolve all doubts about federal jurisdiction in favor of remand and are strictly to construe legislation permitting removal." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (quotation marks omitted). However, when a federal court does have jurisdiction over a case properly before it, it has a "virtually unflagging obligation to exercise it." *Holbein v. TAW Enters., Inc.*, 983 F.3d 1049, 1060 (8th Cir. 2020) (en banc) (internal quotation marks omitted) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

## III.    DISCUSSION

In their Notices of Removal, Defendants assert a variety of grounds for the Court's subject matter jurisdiction, including diversity jurisdiction if the Court finds there is fraudulent misjoinder or fraudulent joinder, and federal question jurisdiction. In its Motion to Remand, Jefferson City argues (1) the Court does not have subject matter jurisdiction under either diversity or federal question jurisdiction, (2) all of the defendants did not consent to removal making removal improper, and (3) the Court should abstain from asserting any jurisdiction if it does in fact have jurisdiction. After reviewing the parties' arguments and the case law, the Court finds it does not have subject matter jurisdiction over this matter, and it must remand the case back to the state court. As the Court lacks subject matter jurisdiction, it will not rule on Defendants' Motions to Sever or any other pending motions.

A.    **Consent to Removal**

When a defendant removes a case from state court to federal court, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). This is called the rule of unanimity. *Byrd v. Auto-Owners Ins. Co.*, 4:08-CV-1368 SNLJ, 2008 WL 5071105 at *2 (E.D. Mo. Nov. 24, 2008). Jefferson City asserts Sho-Me Technologies has not properly consented to removal of this action, and has, in fact, waived its ability to consent; therefore, Defendants have not complied with the removal statute and the Court should remand the matter.

While a codefendant does not need to sign the notice of removal itself, each codefendant must file a notice of consent after removal. *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). The consent must be written and timely filed. *Byrd*, 2008 WL 5071105 at *2. A failure to file a written notice of consent on the part of each defendant requires remand. *Id*. In this case, while the other Defendants all filed memorandums in support of the notice of remand, Sho-Me Technologies did not. Sho-Me Technologies has not filed any written notice of its consent to the removal of this case.

Defendants argue Jefferson City never properly served or joined Sho-Me Technologies in the case so it did not need to consent to the removal. Section 1446(b)(2)(A) states, "all defendants who have been properly joined and served must join in or consent to the removal of the action." The record of the state court docket does not show Jefferson City ever served Sho-Me Technologies. ECF No. 1-1, at 1-8. Sho-Me Technologies filed a motion to dismiss while the case was still in state court in which it argued there had been insufficient process and insufficient service of process. Jefferson City argues Sho-Me Technologies waived service of process by voluntarily entering an appearance and filing a motion to sever and transfer the case without mentioning the adequacy of the service of process. However, Sho-Me Technologies did not

5

waive service of process because in Missouri a defending party who wishes to raise a defense of insufficiency of process or service of process "must do so in either a pre-answer motion or in the party's answer." *Worley v. Worley*, 19 S.W.3d 127, 129 (Mo. 2000). Sho-Me Technologies raised the issue of insufficiency of process and service of process in a motion to dismiss filed on the same day as its motion to transfer, before filing an answer. ECF 1-1, at 3. Therefore, it has not waived service of process. Because Sho-Me Technologies is not a served defendant, it did not need to consent to the removal for the removal to be proper. The lack of consent by Sho-Me Technologies is not a basis for remand under these circumstances.

### B. Issues with Defendants' Notices of Removal

Next, Jefferson City argues the Verizon and AT&T Defendants cannot assert grounds for removal they did not raise in a timely filed notice of removal. The Verizon and AT&T Defendants filed memoranda in support of the Notice of Removal filed by the Sprint and T-Mobile Defendants and not their own Notices of Removal. Therefore, Jefferson City asserts the Verizon and AT&T Defendants are limited to the grounds for removal raised in the Sprint and T-Mobile Defendants' Notice of Removal. Jefferson City contends this is not form over substance; however, its argument suggests the contrary.

The Verizon and AT&T Defendants filed documents titled "Memorandum in Support of Notice of Removal." ECF Nos. 38, 43. They filed these memoranda within 30 days of being served by Jefferson City. In the AT&T Defendants' memorandum, in the first paragraph, they state they "respectfully affirm and supplement the Notice of Removal . . ." ECF No. 38, at 1. The failure of the Verizon and AT&T Defendants to title their filing "Notice of Removal" does not prevent the Court from considering their arguments for removal when the substance of the document complies with the 28 U.S.C. 1446(a)'s requirement to include a short and plain statement for the grounds for removal.

C.        When to Decide the Motions to Sever

In addition to Jefferson City's Motion to Remand, currently pending before the Court are Defendants' Motions to Sever. If the Court were to grant the Motions to Sever, diversity jurisdiction would exist for some of the severed claims, allowing them to remain in federal court, while the Court would remand the claims involving nondiverse defendants. A key question then is whether the Court should rule on the motions to sever before determining if it has subject matter jurisdiction. Jefferson City asserts the Court must find it has subject matter jurisdiction before considering the motions to sever, while Defendants argue the Court can rule on the motions to sever first.

The Honorable Matthew Schelp recently addressed this issue in *Thompson v. R.J. Reynolds Tobacco Co.*, No. 4:20-CV-980 MTS, 2020 WL 5594072 (E.D. Mo. Sept. 18, 2020). After finding the defendants had not proven fraudulent joinder and failed to establish subject matter jurisdiction, Judge Schelp refused to sever the claim against the nondiverse defendant. *Id*. at *4. Judge Schelp concluded, "Since Rule 21 does not extend the jurisdiction of district courts, see Fed. R. Civ. P. 82, a court's use of Rule 21 presumes that the court has subject matter jurisdiction over the claims, which, here, it does not." *Id*. (internal quotations omitted) (citing *In re: Bard Ivc Filters Prod. Liab. Litig.*, No. 2641, 2016 WL 2347430, at *8 (D. Ariz. May 4, 2016)). The undersigned finds Judge Schelp's reasoning persuasive. Rule 82 specifically states "[t]hese rules do not extend or limit the jurisdiction of the district courts." Thus, the Court must first find it has jurisdiction before applying Rule 21. Without jurisdiction, the Court cannot sever any claims. "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal quotations omitted).

7

While the Court recognizes some district courts have severed claims without finding subject matter jurisdiction, there are many who have found it is not appropriate to sever claims to create jurisdiction. *See Chaudri v. State Auto Prop. & Cas. Ins. Co.*, No. 4:17-CV-00703 DGK, 2018 WL 4571603 (W.D. Mo. Sept. 24, 2018) (severing the claims and remanding the nondiverse claims while retaining jurisdiction over the remaining); *but cf. Crocker v. Allergan USA, Inc.*, No. 4:18-CV-1288 DDN, 2018 WL 7635923 at *6 (E.D. Mo. Dec. 7, 2018), *report and rec. adopted by* 2018 WL 1242680 (E.D. Mo. Jan. 24, 2019) (listing several cases refusing to sever nondiverse defendants in order to create subject matter jurisdiction). The Court agrees with those courts which have found severance is not appropriate without first finding the Court has subject matter jurisdiction. Absent convincing evidence of fraudulent joinder or fraudulent misjoinder, or federal question jurisdiction, the Court will not address Defendants' Motions to Sever.

**D.      Diversity Jurisdiction**

A defendant may remove an action to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). One way in which federal courts have original jurisdiction over an action is through diversity jurisdiction under 28 U.S.C. § 1332(a). Diversity jurisdiction under § 1332(a)(1) exists if the amount in controversy exceeds $75,000 and if no defendant holds citizenship in the same state where any plaintiff holds citizenship. *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007); § 1332(a)(1) (providing district courts original jurisdiction over all civil actions between "citizens of different States" where the matter in controversy exceeds the sum or value of $75,000). "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity over the entire action." *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 553 (2005).

8

This action lacks complete diversity of citizenship. Plaintiff Jefferson City is a Missouri resident. Defendants Missouri RSA 11/12 LP, Missouri RSA 4 Limited Partnership, and Sho-Me Technologies are also citizens of Missouri.[4] Defendants assert the Court has diversity jurisdiction because Jefferson City has fraudulently misjoined unrelated claims and co-defendants and fraudulently joined nondiverse defendants. According to Defendants, if the Court applies the doctrines of fraudulent joinder and fraudulent misjoinder, it can sever the nondiverse claims, remand those to state court, and retain jurisdiction over the diverse claims.

Before addressing whether the doctrines of fraudulent joinder and fraudulent misjoinder apply, the Court should first explain the difference between the two doctrines, which may be confused with one another. "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a nondiverse defendant solely to prevent removal." *In re Prempro*, 591 F.3d at 620. Fraudulent misjoinder "occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, or a resident defendant, even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other." *Id*. The difference between the two doctrines is whether the claim against (or brought by) the nondiverse party is viable and legitimate. While the Eighth Circuit has recognized and applied the fraudulent joinder doctrine, it has not done so for fraudulent misjoinder. *In re Prempro,* 591 F.3d at 620; *Graham v. Mentor Worldwide, LLC*, 998 F.3d 800, 803 n.3 (8th Cir. 2021).

---

[4] The Court does not know the complete citizenship of AT&T Incorporated or Southwestern Bell Telephone Co. because Defendants have not alleged in their notices of removal the principal place of business for these corporations. Defendants have also not alleged the citizenship of St. Joseph CellTelCo and have affirmatively stated they do not know its citizenship.

i.       **Fraudulent Joinder**

The AT&T and Verizon Defendants assert fraudulent joinder arguments. Where the basis for original jurisdiction is diversity of citizenship, and the face of the complaint does not show complete diversity, a defendant may avoid remand by demonstrating the plaintiff fraudulently joined a nondiverse party to avoid removal. *In re Prempro*, 591 F.3d at 620. Fraudulent joinder occurs when a plaintiff files "a frivolous or otherwise illegitimate claim against a nondiverse defendant solely to prevent removal." *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). The relevant inquiry in analyzing fraudulent joinder focuses only on whether a plaintiff "might" have a "colorable" claim under state law against a fellow citizen. *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007) (emphasizing that the fraudulent joinder inquiry does not focus on the "artfulness of the pleadings" but on the ability of the plaintiff to state a "colorable" claim). To prove a plaintiff fraudulently joined a nondiverse defendant, the defendant seeking removal must prove the plaintiff's claim has "no reasonable basis in fact and law." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 893 (8th Cir. 2014). The doctrine allows the district court to assume jurisdiction over a facially nondiverse case temporarily, and then dismiss a nondiverse party from the case and retain subject matter jurisdiction over the remaining claims, if it finds there is fraudulent joinder of the nondiverse party. *Id.*

Before determining whether any defendants have been fraudulently joined, the Court must first address what materials it may consider when deciding the issue of fraudulent joinder. Generally, courts have concluded that when considering a motion to remand, a district court may consider the pleadings, supporting affidavits, and the motion for remand and supporting affidavits. *Perkins v. R.J. Reynolds Tobacco Co.*, No. 4:20-CV-1663 RWS, 2021 WL 270461 at *3 (E.D. Mo. Jan. 27, 2021) (citing cases from the Western District of Missouri, and the Fifth, Ninth, and Eleventh Circuits of Appeal); *see also Baum v. R.J. Reynolds Tobacco Co.*, No. 4:20-

CV-1557 AGF, 2020 WL 7695403 at *4 (E.D. Mo. Dec. 28, 2020); *Bauman v. Sabreliner Aviation, LLC*, No. 4:17-CV-2553 NCC, 2018 WL 339289 at *2 (E.D. Mo. Jan. 8, 2018).[5] The Court may not use these materials to weigh the evidence or determine the credibility of witnesses. If the question of fraudulent joinder depends on witness credibility and the weight of the evidence, there is no fraudulent joinder. *In re Genetically Modified Rice Litig.*, 618 F. Supp. 2d 1047, 1052 (E.D. Mo. 2009). Following the guidance of these cases, the Court will consider the affidavits at issue.

### 1.    Verizon Defendants

In its First Amended Petition, Jefferson City alleges Defendants are telephone and/or telecommunications companies within the meaning of Jefferson City's license tax and are engaged in the business of furnishing telephone or telecommunications services in Jefferson City. ECF No. 6, at ¶ 29. Jefferson City alleges Defendants prepare and submit statements of their alleged gross receipts and remit license tax payments to Jefferson City, and Defendants have failed, and continue to fail, to pay the full amounts required under Jefferson City's license tax. *Id*. at ¶¶ 30, 32.

The Verizon Defendants assert only one of the named Verizon Defendants, Cellco Partnership, provides telecommunication services in Jefferson City, and only Cellco Partnership has ever, during the relevant period, filed a license tax return with Jefferson City for Jefferson City's Business License Tax. As none of the other Verizon Defendants have provided telecommunications services in Jefferson City, the Verizon Defendants argue all but Cellco Partnership have been fraudulently joined.

---

[5] There are also cases from this District which have held it is not appropriate to view materials outside of the pleadings when considering fraudulent joinder. *See Bailey v. Zimmer Biomet Holdings, Inc.*, No. 4:18-CV-1287 CAS, 2018 WL 10498464 at *5 (E.D. Mo. Oct. 24, 2018); *C.C. ex rel. Chambers v. Union Pacific R. Co.*, No. 4:05-CV-1070 JCH, 2005 WL 2406027 at *3 (E.D. Mo. Sept. 28, 2005); *Heimann v. Burlington N. Santa Fe Ry. Co.*, No. 4:05-CV-594 FRB, 2005 WL 1474142 at *2 (E.D. Mo. Jun. 14, 2005).

In support of this argument, the Verizon Defendants have filed two affidavits. In the first, the declarant is Sarah Trosch, a Manager of Regulatory and Government Affairs at Verizon Corporate Resources Group, LLC, an indirect, wholly owned subsidiary of Verizon Communications, Inc., who is required, as part of her job duties, to administer and keep track of all licenses the Federal Communications Commission has issued to Verizon legal entities enabling the license holders to provide wireless telecommunications services to customers. ECF No. 46-2, at 2. In her affidavit, Ms. Trosch states she reviewed the status of each of the Verizon legal entities named in the First Amended Petition and found as follows: (1) GTE Wireless LLC is not, and has never been, during the relevant time period, an Authorized License User of any FCC license; (2) Bell Atlantic Mobile Systems LLC and Verizon Americas LLC are Authorized License Users but are not, and have never been, authorized to provide wireless telecommunications services in Missouri; (3) Alltel Corporation, Missouri RSA 4 Limited Partnership, and St. Joseph CellTelCo are Authorized License Users and authorized to provide wireless telecommunications service in particular areas of Missouri, but they have not, and have never been, authorized to provide wireless telecommunications services in Jefferson City; and (4) Cellco Partnership is the only named Verizon legal entity that is an Authorized License User of an FCC License which is authorized to provide wireless telecommunications services in Jefferson City, Missouri. ECF No. 46-2, at 2-3.

In the second affidavit, the declarant is Kathleen Joan Makas, the Director of Tax at Verizon Corporate Resources Group LLC, who supervises employees responsible for preparing and filing business license tax returns for local business license taxes, including the one imposed by Jefferson City. ECF No. 46-3, at 2. Ms. Makas states she has reviewed the status of each Verizon legal entity named in the First Amended Petition and found the only Verizon legal entity to file a license tax return with Jefferson City during the relevant time period was Cellco

12

Partnership. *Id.* at 3. None of the other named entities filed a license tax return with Jefferson City. *Id.*

The Court cannot find that there is no reasonable basis in fact and law for Jefferson City's claims against the Verizon defendants based on these affidavits. The affidavits do not eliminate the possibility the Verizon Defendants are operating without a license or without filing the proper business license tax returns. Additionally, nowhere in the First Amended Petition does Jefferson City limit its allegations to the provision of wireless telephone communications services. The First Amended Petition refers to telephone and telecommunication services without specifying that it only encompasses wireless services. However, the Verizon Defendants' affidavits only refer to wireless telecommunication services. For these reasons, the Court concludes the Verizon Defendants have not proven they were fraudulently joined because they have not shown there is no reasonable basis in law or fact for Jefferson City's claims.

Neither the Verizon nor the AT&T Defendants have show there is no reasonable basis in law or fact for Jefferson City's claims against them. Therefore, fraudulent joinder does not apply.

### 2.      AT&T Defendants

The AT&T Defendants argue Missouri RSA 11/12 LP, a nondiverse defendant, is fraudulently joined because it does not provide wireline telephone service. The AT&T Defendants assert diversity jurisdiction over claims regarding wireline service, but not wireless service. However, nothing in the First Amended Petition suggests Jefferson City has separated its allegations into claims involving wireline service rather than claims involving wireless service. Instead, Jefferson City alleges Defendants provide telephone and telecommunication services. If Missouri RSA 11/12 LP provides wireless telecommunication services in Jefferson City, then there is a reasonable basis in fact and law for Jefferson City's claims against Missouri RSA 11/12 LP. The First Amended Petition does not exclude any particular type of telephone or

telecommunication services; thus, the provision of any telecommunication services qualifies. For this reason, the Court finds Jefferson City has not fraudulently joined Missouri RSA 11/12 LP.

### ii. Fraudulent Misjoinder

Defendants argue Jefferson City fraudulently misjoined various diverse and nondiverse Defendants together in a single action to avoid removal to federal court. Defendants further allege Jefferson City's First Amended Petition does not claim "any right to relief [] asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," as Rule 20 requires. Defendants believe the Court should sever the action into five separate actions by corporate families, retain jurisdiction over the diverse defendants, and remand the nondiverse defendants to state court.

Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant and joins a viable claim against a nondiverse party, "even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other." *In re Prempro*, 591 F.3d at 620. In contrast to fraudulent joinder, the claims against the nondiverse party are not frivolous or illegitimate, they simply do not relate to the other claims in the action. *Id.* The Eighth Circuit has not adopted or rejected the fraudulent misjoinder doctrine. [6] *Id.* at 622; *see also Graham*, 998 F.3d at 803 n.3.

---

[6] The vast majority of judges in this district have refused to adopt the fraudulent misjoinder doctrine without further guidance from the Eighth Circuit, but have nonetheless, analyzed the arguments under the egregious standard as done by the Eighth Circuit in *In re Prempro*. *See T.F. ex rel. Foster v. Pfizer, Inc.*, No. 4:12CV-1221 CDP, 2012 WL 3000229 at *2 (E.D. Mo. Jul. 23, 2012) ("[T]here is no need to express an opinion the validity of the fraudulent misjoinder doctrine because [the defendant] has failed to demonstrate that the joinder . . . in this action is so egregious and grossly improper . . . that plaintiffs' misjoinder borders on a sham . . ." (internal quotations omitted)); *Spears v. Fresenius Med. Care N. Am., Inc.*, No. 4:13-CV-855 CEJ, 2013 WL 2643302 at *3 (E.D. Mo. Jun. 12, 2013) ("In the instant case, defendants have not demonstrated that the joinder of a [nondiverse] citizen with the other plaintiffs in this action 'borders on a sham.'"); *H&B Ventures, LLC v. State Auto Prop. & Cas. Ins. Co.*, No. 4:21-CV-1385 JCH, 2022 WL 392239 at *4 (E.D. Mo. Feb. 9, 2022); *Andy Timmons, Inc. v. Monsanto Co.*, No. 1:21-CV-104 SNLJ, 2022 WL 74000 at *2 (E.D. Mo. Jan. 7, 2022); *Morgan v. Janssen Pharm., Inc.*, No. 4:14-CV-1346

The Eleventh Circuit first recognized the fraudulent misjoinder doctrine in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996). In that case the plaintiffs filed a single action on behalf of two distinct groups of plaintiffs, with two distinct claims against unrelated defendants. *Id*. at 1355. The Eleventh Circuit found "no real connection" between the two sets of alleged transactions, and held the transactions of one group were "wholly distinct" from the transactions of the other group. *Id.* at 1360.[7]

*In re Prempro* neither adopted nor rejected the fraudulent misjoinder doctrine; however, the court stated that even if it were to adopt the doctrine, fraudulent misjoinder did not apply because the plaintiffs' alleged misjoinder was not so egregious as to constitute fraudulent misjoinder. 591 F.3d at 622. *In re Prempro* noted the majority of courts who have adopted the fraudulent misjoinder doctrine "demand more than simply the presence of nondiverse, misjoined parties, but rather a showing that the misjoinder reflects an egregious or bad faith intent on the part of the plaintiffs to thwart removal." *Id*. at 623 (citation omitted). Mere misjoinder under Rule 20 is not fraudulent misjoinder. *Id*. at 621, 623. The plaintiff's misjoinder must be "so egregious and grossly improper" that it "borders on a 'sham'" before the fraudulent misjoinder doctrine can apply. *Id*. at 624.

*In re Prempro* first considered the language of Rule 20. A plaintiff is allowed to join multiple defendants in one action if (A) any right to relief is asserted against them "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;"

---

CAS, 2014 WL 6678959 at *3 (E.D. Mo. Nov. 25, 2014); *Clark v. Pfizer, Inc.*, No. 4:15-CV-546 HEA, 2015 WL 4648019 at *2 (E.D. Mo. Aug. 5, 2015) (listing cases from the Eastern District of Missouri finding the joinder was not egregious).

[7] One group of plaintiffs asserted claims arising from the sale of service contracts on automobiles sold and financed in Alabama against one group of defendants. *Id*. at 1355. A second group of plaintiffs asserted claims against a second group of defendants arising from the sale of extended service contracts in connection with the sale of retail products. *Id*.

and (B) "any question of law or fact common to all defendants will arise in the action." [8] Rule

20(a)(2); *see In re Prempro*, 591 F.3d at 622. The Eighth Circuit provides "a very broad

definition for the term 'transaction.'" *Id.* at 622.

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

> Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Id.* (quoting *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974), and

7 Charles A. Wright et al., *Federal Practice and Procedure,* § 1653, at 415 (3d ed. 2001)

(explaining that the transaction/occurrence requirement prescribed by Rule 20(a) is not a rigid

test and is meant to be "read as broadly as possible whenever doing so is likely to promote

judicial economy")).

After analyzing the plaintiffs' complaints, *In re Prempro* held that the court "cannot say

that their claims have 'no real connection' to each other such that they are egregiously

misjoined." 591 F.3d at 623. "Here, there may be a palpable connection between the plaintiffs'

claims against the manufacturers[.]" *Id.*

After *In re Prempro*, the question before the Court is not whether joinder is proper under

Rule 20, but whether Jefferson City's joinder of the same claims against these Defendants in a

single action is so egregious and grossly improper that the joinder shows bad faith or borders on

a sham. Jefferson City joined twenty-one telephone companies alleging four claims against each

Defendant seeking payment of a municipal tax, attorney's fees, a declaratory judgment, and an

---

[8] Missouri's joinder rule is virtually identical to Fed. R. Civ. P. 20. *See* Mo. Sup. Ct . R. 52.05(a).

accounting based on those companies providing telephone or telecommunication services in Jefferson City.

Defendants allege improper joinder under Rule 20, but the fraudulent misjoinder analysis must determine if the Defendants have shown Jefferson City's joinder is so egregious, grossly improper, with such bad faith, that the joinder borders on a sham. *In re Prempro*, 591 F.3d at 623-24. The Court will not opine on whether the claims are properly joined under Rule 20, but rather, will focus on the evidence of egregious misjoinder and bad faith. *Id*. at 623 ("We clarify that we make no judgment on whether the plaintiffs' claims are *properly* joined under Rule 20." (emphasis in original)). "[I]n situations where the sufficiency of the complaint against the non-diverse defendant is questionable, 'the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide.'" *Filla,* 336 F.3d at 811 (quoting *Iowa Public Serv. Co. v. Med. Bow Coal Co.,* 556 F.2d 400, 406 (8th Cir. 1977)).

Defendants have not presented sufficient evidence that Jefferson City acted with bad faith. *In re Prempro*, 591 F.3d at 623 ("Without any evidence that the plaintiffs acted with bad faith, we decline to conclude they egregiously misjoined their claims."). The T-Mobile and Sprint Defendants argue the inclusion of Sho-Me Technologies, in particular, shows the egregious nature of the joinder because "there is no discernable reason why Jefferson City, located in Cole County, would bring suit against a Marshfield company, located in Webster County, in the Circuit Court of St. Louis County for the violation of a Jefferson City ordinance." ECF No. 79, at 11.

"It is well-settled that the 'plaintiff is the master of [the] complaint.'" *Winfrey v. City of Forrest City, Ark.*, 882 F.3d 757, 758 (8th Cir. 2018) (quoting *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002)). The Court has no evidence showing Jefferson

City joined Sho-Me Technologies as a defendant for any reason other than Sho-Me Technologies allegedly provided telephone or telecommunication services in Jefferson City during the relevant time. Sho-Me Technologies is not the sole defendant which defeats complete diversity. At least two other Defendants are nondiverse defendants – Missouri RSA 4 Limited Partnership and Missouri RSA 11/12 LP. If a nondiverse party is a real party in interest, "the fact that his joinder was motivated by a desire to defeat federal jurisdiction is not material." *Couch v. Fresenius Med. Care N. Am., Inc.*, No. 4:14-CV-955 JAR, 2014 WL 3579926 at * (E.D. Mo. Jul. 21, 2014) (quoting *McGee v. Fresenius Med. Care N. Am., Inc.*, No. 4:14-CV-967 SNLJ, 2014 WL 2993755 at *4 (E.D. Mo. Jul. 3, 2014) and citing *Dickerson v. GlaxoSmithKline, LLC*, No. 4:10-CV-972 AGF, 2010 WL 2757339 at *2 (E.D. Mo. Jul. 12, 2010)). Defendants have not established that Sho-Me Technologies and Missouri RSA 11/12 LP are not real parties in interest. The Court cannot say why Jefferson City filed this action in St. Louis County, rather than Cole County, Webster County, or any other county in Missouri; however, the choice of county in state court does not affect the federal court's subject matter jurisdiction.

Reading Rule 20 as broadly as *In re Prempro* requires, this Court cannot say that Jefferson City's claims against Defendants have "no real connection" to each other such that they are egregiously misjoined. There is a "palpable connection" between Jefferson City's claims against the Defendants as they all relate to the alleged failure to pay the same municipal tax. Defendants failed to show Jefferson City's joinder of these companies in a single lawsuit for the same claims is so egregious, so grossly improper, and so tainted with bad faith, to show Jefferson City's joinder borders on a sham. For this reason, even if the Eighth Circuit were to adopt the fraudulent misjoinder doctrine, this Court would not find the doctrine applies in this case. Absent any evidence of bad faith, the Court does not find fraudulent misjoinder.

### E.      Federal Question Jurisdiction

In their Notices of Removal, the T-Mobile and Sprint Defendants asserted federal question jurisdiction based on complete preemption by the Federal Communications Act. ECF No. 1, at 9. The U.S. Cellular Defendants joined in this argument, as did the AT&T Defendants and the Verizon Defendants. ECF Nos. 12, at 2; 38, at 1; 46, at 1. The AT&T Defendants also assert a separate federal question jurisdiction argument based on prior settlement agreements between the AT&T Defendants and Jefferson City. ECF No. 38, at 2.

### i.      Complete Preemption

Defendants argue Jefferson City's claims under Missouri Revised Statute Chapter 329 are completely preempted by the Federal Communications Act (FCA), 47 U.S.C. § 332(c)(3)(A). Jefferson City addressed this argument in its memorandum in support of its motion to remand. Not a single defendant defended the argument in their oppositions to Jefferson City's motion to remand. This Court previously found "the statutory text of the FCA lacks the extraordinary preemptive power required to convert a state-law complaint 'into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *State ex rel. Nixon v. Nextel W. Corp.*, 248 F. Supp. 2d 885, 891 (E.D. Mo. 2003) (quoting *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 65 (1987)). By failing to defend the argument in their briefs, Defendants have abandoned the argument, and the Court will not address it any further. *See Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.").

### ii.      AT&T's Federal Question Jurisdiction

The AT&T Defendants claim the Court has federal question jurisdiction over Counts I-IV as to wireless service. According to the AT&T Defendants, Jefferson City asserted these same claims against AT&T in two prior federal cases filed in the U.S. District Court for the Western

District of Missouri, captioned *City of Jefferson City, Mo. v. Cingular Wireless LLC, et al.*, 2:04-CV-04099 NKL, and *City of Jefferson City v. New Cingular Wireless Services, Inc.*, 2:05-CV-04348 NKL. The parties in the prior actions entered into settlement agreements in 2006. The AT&T Defendants now assert any claim as to the settlement agreements arises under federal law because the agreements define the applicable business license tax payment obligation by incorporating a federal statute, 4 U.S.C. §§ 116-126, the Mobile Telecommunications Sourcing Act ("MTSA"). The AT&T Defendants argue federal question jurisdiction exists over state law claims that implicate significant federal issues pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005).

"An action 'aris[es] under' federal law: (1) where 'federal law creates the cause of action asserted,' and (2) in a 'special and small category of cases' in which arising under jurisdiction still lies." *Vermont v. MPHJ Tech. Inv., LLC*, 803 F.3d 635, 645 (Fed. Cir. 2015) (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013)). This second category of cases allows for federal jurisdiction to exist where "[a] state law claim [] necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*, 545 U.S. at 314. The Supreme Court refined this into a four-part test where federal jurisdiction arises under a state law claim "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065.

First, the Court notes the First Amended Petition makes no mention of the settlement agreements. Therefore, any issues with respect to the settlement agreements only arise if raised as a defense by the AT&T Defendants, such as whether the settlement agreements bar Jefferson

20

City's claims against the AT&T Defendants.[9] "Under the well pleaded complaint rule, a federal question must appear on the face of the plaintiff's complaint in order to create federal question jurisdiction." *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012) (citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987)). A potential federal defense cannot create federal jurisdiction. *Id.* Because the issue of federal law is only raised if the settlement agreement is asserted in a defense, a federal issue is not "necessarily raised" under the *Grable* test.

In *Wullschleger v. Royal Canin U.S.A., Inc.*, the Eighth Circuit recently addressed the issue of whether federal law is "necessarily raised," in a complaint. 953 F.3d 519 (8th Cir. 2020). The Eighth Circuit held in *Wullschleger* that the claims at issue necessarily raised federal law because the plaintiffs claimed the defendants violated federal law, were non-compliant with a federal agency's guidance, and refused to submit to the federal agency's review. *Id*. at 522. The plaintiffs also sought injunctive and declaratory relief requiring the interpretation and application of federal law, including asking for a judgment finding defendants violated federal law, enjoining the defendants from engaging in further violations of federal law, and enjoining the defendants to comply with all federal provisions applicable to the case. *Id*. In contrast with this case, the issue of federal law is only raised in the definitions of a prior settlement agreement which are not mentioned in the First Amended Petition. These matters are only raised by the AT&T Defendants; thus, the AT&T Defendants have not met the first factor in the *Grable* test.

The AT&T Defendants have also not satisfied the second factor in the *Grable* test that a federal issue is actually disputed. In their opposition brief, the AT&T Defendants conclude the meaning of the MTSA is actually disputed. However, based on the parties' arguments currently

---

[9] The Court will not discuss whether the terms of the settlement agreements bar Jefferson City's claims as that is a matter more appropriately raised in a motion to dismiss before the state court on remand.

before the Court, it appears there is a dispute over the applicability of the settlement agreement, but not the definitions of that agreement. The dispute is not necessarily over the language of the MTSA, but whether the settlement agreements apply at all under state law. Consequently, the Court cannot say at this juncture that the MTSA is actually in dispute.[10] Because the federal issue asserted by the AT&T Defendants is not necessarily raised and not currently in dispute, the exception under *Grable* for federal question jurisdiction does not apply. The AT&T Defendants have not established federal question jurisdiction over the claims Jefferson City asserts against them.

## IV.    CONCLUSION

The Court does not find it has subject matter jurisdiction. The Court must "resolve all doubts about federal jurisdiction in favor of remand[.]" *Dahl* 478 F.3d at 968. This case does not present complete diversity of citizenship. Defendants have not established diversity jurisdiction through either fraudulent joinder or fraudulent misjoinder. Defendants also failed to establish federal question jurisdiction. Having failed to find this Court has subject matter jurisdiction, the Court will not sever the claims between the different defendants to create jurisdiction over some defendants, while remanding the claims against the nondiverse defendants. Therefore, the entire matter must be remanded.

---

[10] The AT&T Defendants attached a pre-litigation letter from Jefferson City's attorneys to suggest the issue is whether the AT&T Defendants owe taxes on the sale of telephone equipment. However, the First Amended Petition alleges the AT&T Defendants owe taxes on all telephone and telecommunication services and does not limit itself to taxes on the sales of equipment. A pre-litigation letter does not determine if a federal issue is actually in dispute.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff City of Jefferson, Missouri's Motion to Remand to State Court (ECF No. 50) is **GRANTED**. Pursuant to 28 U.S.C. § 1447(c), the Clerk of the Court shall mail a certified copy of this order of remand to the clerk of the State Court.

**IT IS FURTHER ORDERED** that Defendants T-Mobile Central LLC, T-Mobile US, Inc., T-Mobile USA, Inc., Sprint Spectrum, LLC, and Sprint Communications, LLC's Motion to Sever (ECF No. 52) is **DENIED, as moot**.

**IT IS FURTHER ORDERED** that Defendants AT&T Corp., AT&T Inc., AT&T Mobility LLC, Missouri RSA 11/12 LP, New Cingular Wireless PCS, LLC, and Southwestern Bell Telephone Company's Motion to Sever (ECF No. 68) is **DENIED, as moot**.

**IT IS FURTHER ORDERED** that Defendants Cellco Partnership, Bell Atlantic Mobile Systems LLC, GTE Wireless LLC, Verizon Americas LLC, Alltel Corporation, Missouri RSA 4 Limited Partnership, and St. Joseph CellTelCo's Motion to Sever (ECF No. 73) is **DENIED, as moot**.

**IT IS FURTHER ORDERED** that Defendant Sho-Me Technologies' Motion to Sever (ECF No. 75) is **DENIED, as moot**.

So Ordered this 22nd day of September, 2022.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE

23